RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
SHREVEPORT, LOUISIANA
DATE 1/23/07
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY | CIVIL ACTION NO. 06-1595 |
| VERSUS | JUDGE DONALD E. WALTER |
| WHITAKER CONSTRUCTION, INC. | MAGISTRATE JUDGE HORNSBY |

**ORIGINALLY FILED
IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| IN RE:<br>WHITAKER CONSTRUCTION COMPANY, INC. | CASE NO. 02BK-12642<br>CHAPTER 11 |
| WHITAKER CONSTRUCTION, INC. | ADV. PROC. NO. 03AP1113 |
| VERSUS | |
| SOUTHERN MATERIAL SUPPLY, ET AL. | |

## MEMORANDUM RULING

Before this Court is St. Paul Fire and Marine Insurance Company's ("St. Paul's") appeal [Doc. #8] from the Bankruptcy Court's Final Partial Judgment, entered on August 3, 2006, granting Whitaker Construction Company's ("Whitaker's") Motion for Partial Summary Judgment on Insurance Coverage Under Employee Dishonesty Policy, entering partial judgment against St. Paul in the amount of THREE HUNDRED FIFTY-ONE THOUSAND TWO HUNDRED NINE AND 92/100ths Dollars ($351,209.92), and denying St. Paul's Motion for Summary Judgment. After

having reviewed the entire record on appeal and the appellate briefs, this Court finds that the five insurance policies issued to Whitaker in 1998, 1999, 2000, 2001 and 2002 do not provide coverage for the losses discovered by Whitaker in November 2003. For the reasons that follow, the Bankruptcy Court's August 3, 2006 Final Partial Judgment is **REVERSED**, with the issue of St. Paul's recovery of the $110,000.00 previously paid to Whitaker to be **REMANDED** to the Bankruptcy Court for determination consistent with this Ruling.

## STATEMENT OF THE CASE

Five insurance policies covering crime losses were issued to Whitaker in 1998 (Policy No. KK0910054), 1999 (Policy No. KK09100748), 2000 (Policy No. KK09101047), 2001 (Policy No. KK09101305) and 2002 (Policy No. KK09101506). The 1998 and 1999 Policies provided $50,000.00 in coverage for Employee Dishonesty[1], while the 2000, 2001 and 2002 Policies provided $100,000.00 in coverage. All five policies provided $10,000.00 in coverage for Forgery or Alteration.

On August 9, 2002, several of Whitaker's creditors initiated involuntary Chapter 7 bankruptcy proceedings against Whitaker, that were converted to a voluntary Chapter 11 bankruptcy proceeding on September 9, 2002. Whitaker later hired special counsel to investigate preferences, including a possible preference claim based on a May 8, 2002 check for $32,780.11 payable to Southern Material Supply ("SMS"). Questions about this check eventually led Whitaker to file an adversary proceeding against SMS on November 21, 2003. After further investigation, Whitaker

---

[1] Whitaker asserts that the 1999 Policy provided $100,000.00 in Employee Dishonesty coverage. However, the Declarations Page of the 1999 Policy, attached as Exhibit C-2 to Whitaker's Opposition, clearly shows a $50,000.00 limit. The amount is irrelevant, however, as this Court finds the 1999 Policy does not cover losses incurred in 1999 but not discovered until 2003.

discovered that its Treasurer, Michael J. Hutcheson, CPA ("Hutcheson"), embezzled more than half a million dollars from Whitaker between 1993 and 2002 by forging checks drawn on Whitaker's account and made payable to a company he created. Hutcheson made the payments appear to be for construction materials or services that were never actually provided. Hutcheson pled guilty to bank fraud in federal court.

On February 2, 2004, Whitaker added Hutcheson and Champion Mid-South, L.L.C. as defendants in the adversary proceeding. On February 13, 2004, St. Paul issued a check to Whitaker and its attorneys in the amount of $110,000.00 under the 2002 Policy (Policy No. KK09101506). On April 20, 2004, Whitaker added St. Paul as a defendant in the adversary proceeding originally brought against SMS.[2] Whitaker alleged that St. Paul provided policies of insurance to plaintiff that afforded coverage for "the acts and omissions and conduct of Defendants set forth in Plaintiff's original complaint, as amended." It is undisputed that Hutcheson's embezzlement from Whitaker was the type of crime to be protected against under the five crime loss insurance policies.

The 1998, 1999, 2000 and 2001 Policies (the "Pre-2002 Policies") provided the following:

> We'll apply this agreement to covered losses that happen while this agreement is in effect. And you have up to one year after this agreement ends to discover the loss.

The 2002 Policy provided that:

> We'll pay for covered losses that you sustain from events occurring at any time and discovered by you while this agreement is in effect.

\* \* \*

---

[2]St. Paul raises the issue of the proper party insurer for the first time on appeal. Specifically, St. Paul asserts that it only issued the 2002 Policy whereas St. Paul Mercury Insurance Company issued the 1998, 2000 and 2001 Policies, and St. Paul Guardian Insurance Company issued the 1999 Policy. Based on this Court's finding of no coverage, this issue is moot and need not be addressed.

> You'll have up to 60 days after this agreement ends to discover the loss.

It is undisputed that Hutcheson committed the types of acts covered by the policies during each policy period. It is also undisputed that Whitaker did not discover the offending acts until November 2003.

Whitaker and St. Paul filed cross-Motions for Summary Judgment that came for hearing before the Bankruptcy Court on July 19, 2006. In its motion, St. Paul asserted, inter alia, that Whitaker's failure to discover the covered losses beyond the period provided in each of the policies precluded coverage. In response to the "no coverage" argument, Whitaker asserted that the policy provisions giving one year (Pre-2002 Policies) or sixty days (2002 Policy) from the expiration of the policy to discover any loss covered by the policy were against Louisiana public policy as stated in La. R.S. 22:629.[3]

Finding policy coverage, the Bankruptcy Court granted Whitaker's motion and denied St. Paul's motion. The Court determined that genuine issues of material fact remained as to $107,771.26 of Whitaker's claim, and that St. Paul's minimum liability was $461,209.92. After deducting the $110,000.00 prior payment by St. Paul, the Bankruptcy Court rendered judgment against St. Paul in the amount of $351,209.92. The Bankruptcy Court certified its judgment as a

---

[3]Title 22, Section 629(B) provides that "No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code." La. R.S. 22:629 was amended in 2006. The relevant language of that statute remained the same, only the citation was altered. In other words, what was once La. R.S. 22:629(A)(3) is now La. R.S. 22:629(B).

final and appealable partial judgment in accordance with Federal Rule of Civil Procedure 54(b) and Federal Rule of Bankruptcy Procedure 7054(a). St. Paul now appeals the Bankruptcy Court's judgment.

For the reasons that follow, this Court disagrees with the Bankruptcy Court's finding in favor of Whitaker.

## LAW AND ANALYSIS

### A.  Jurisdiction and Standard of Review.

This Court has jurisdiction over St. Paul's appeal from the Bankruptcy Court's Judgment pursuant to 28 U.S.C. § 158(a). The standard of review for the granting of summary judgment and the denial of a cross-motion for summary judgment is *de novo*. In re Erlewine, 349 F.3d 205, 209 (5th Cir. 2003); see also In re Gerhardt, 348 F.3d 89, 91 (5th Cir. 2003). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Bankr. R. 7056 (applying Fed. R. Civ. P. 56 to adversary bankruptcy proceeding).

### B.  The Insurance Policies at Issue Do Not Provide Coverage for Whitaker's Claims.

It is undisputed that Louisiana law governs plaintiff's claims under the insurance policies at issue. Louisiana courts have determined that whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. Bonin v. Westport Ins. Corp., 930 So.2d 906, 910 (La. 2006). As an insurance policy is a contract between the parties, it should be construed using the general rules of contract interpretation under Louisiana law. Id. The Court, in interpreting an insurance policy, must determine the parties' common intent, and must construe words and phrases used in such a

policy using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. Id., citing La. C.C. arts. 2045, 2047. Louisiana law is clear that "[u]nless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes." Id.

When determining the issue of policy coverage for an incident, the insured has the burden of proving that the incident falls within the policy's terms. Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000). St. Paul asserts, and this Court agrees, that Whitaker has failed to meet this burden.

As quoted above, the Pre-2002 Policies include the following language:

> We'll apply this agreement to covered losses that happen while this agreement is in effect. And you have up to one year after this agreement ends to discover the loss.

It is undisputed that Whitaker suffered losses during each policy year since Hutcheson issued and deposited checks for his personal benefit in 1998, 1999, 2000 and 2001. The 2002 Policy limits coverage as follows:

> We'll pay for covered losses that you sustain from events occurring at any time and discovered by you while this agreement is in effect.
>
> \*    \*    \*
>
> You'll have up to 60 days after this agreement ends to discover the loss.

St. Paul asserts that according to the policy language quoted above, Whitaker had until January 1, 2003, to discover any losses sustained during the 2001 Policy year, and until March 3, 2003, during the 2002 Policy year. It is undisputed that Whitaker did not discover the losses until November 2003. Thus, there is no coverage.

As asserted by St. Paul, the parties contracted to cover employee dishonesty and forgery or

6

alteration only for the policy year, and only if such conduct resulting in a loss to the insured was discovered by the insured within the policy year or within sixty days after the expiration of the policy. Presumably, the policy premiums were based on this limited coverage, and such limited coverage would compel the insured to keep a close eye on its employees. In fact, it would seem that this policy language was drafted to protect against just what occurred in the case sub judice - an employer waiting for almost ten years[4] before taking a deeper look at its books and the acts of its employees. "In effect, the insured received what he paid for by the present policy, with premiums presumably reduced to reflect the limited coverage." Livingston Parish Sch. Bd. v. Fireman's Fund American Ins. Co., 282 So.2d 478, 483 (La. 1973).

Finding that the Pre-2002 and 2002 Policies unambiguously limited the insurer's liability and imposed reasonable conditions upon the insured, this Court must now address Whitaker's assertion that these limitations are void as they conflict with statutory provisions and Louisiana public policy, specifically La. R.S. 22:629.

## C.     Limitation of Coverage is Not Contrary to Louisiana Public Policy.

Whitaker asserts that the policy provisions relied upon by St. Paul conflict with La. R.S. 22:629(B) such that these provisions are void as against public policy. St. Paul asserts that the policies do not conflict with Louisiana law as they do not limit the prescriptive period within which an insured may assert a claim but rather define a covered loss as one that occurs during the policy year and is discovered by the insured within one year after the expiration of the Pre-2002 Policies or sixty days after expiration of the 2002 Policy.

---

[4]Whitaker asserts that Hutcheson's fraudulent acts may have commenced as early as 1993.

7

La. R.S. 22:629(B) provides that "No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code."

The Bankruptcy Court denied St. Paul's motion and agreed with Whitaker finding that La. R.S. 22:629 prohibited the type of language in the policy that limited coverage to those losses discovered within a year, or sixty days, of the policy's expiration.

The issue before this Court at this juncture is whether the policies at issue had the effect of "limiting the right of action against the insurer to a period of less than twelve months next after the inception of the loss" or "to a period of less than one year from the time when the cause of action accrues." La. R.S. 22:629(B). This Court finds that the policy provisions at issue do not implicate prescription in any manner, only coverage, and, thus, are not void.

A policy that unambiguously and clearly limits coverage to acts discovered and reported during the policy term is not per se impermissible. Livingston Parish School Bd., 282 So.2d at 481. This complies with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract. Id., citing Snell v. Stein, 261 La. 358, 259 So.2d 876, 878 (1972), and decisions there cited. Further, the Fifth Circuit has stated that Louisiana law "clearly approves and enforces" provisions that condition

coverage not upon the date of loss or commission of the act causing the loss, but upon the date of "discovery of the loss." Central Progressive Bank v. Fireman's Fund Ins. Co., 658 F.2d 377, 380 (5th Cir. 1981), citing Livingston, supra.; see also U.S. Fidelity & Guaranty Co. v. Maxicare Health Plans and Maxicare Louisiana, Inc., 1997 WL 466802 (E.D.La. 1997) (policies conditioning coverage upon the date of discovery of loss are enforceable under Louisiana law). If the Louisiana Supreme Court has found that policy language limiting coverage to negligent acts discovered and reported *during* the policy term is not void as against public policy, see id., then a fortiori policy language expanding the allowable time for discovery of a claim *beyond* the policy term would presumably also no offend Louisiana public policy.

The parties disagree as to which phrase of La. R.S. 22:629(B) applies. In other words, do the policies at issue fall within insurance "classified and defined in R.S. 22:6(10), (11), (12), and (13)" or the catchall phrase of "all other insurances" in La. R.S. 22:629(B)? The Court declines to, and needs not, delve into how a crimes loss policy fits into the Louisiana insurance statutory framework, as neither phrase is implicated by the policy provisions limiting coverage.

The first phrase of La. R.S. 22:629(B) prohibits an insurer from limiting a plaintiff's right of action to a period of less than twelve months from the "*inception of the loss.*" Emphasis added. The inception of the losses at issue clearly occurred each time a fraudulent check deposited by Hutcheson cleared and funds were removed from Whitaker's bank account. The undisputed evidence before this Court establishes that the last check so deposited by Hutcheson was in May 2002. Neither the Pre-2002 Policies nor the 2002 Policy limited Whitaker's right of action against its insurer to a period of less than twelve months from each date a check was deposited provided coverage existed. By the same token, under the second phrase of La. R.S. 22:629(B), no policy at

9

issue limited Whitaker's right of action to a period of less than one year from the time when its cause of action accrued. The rub with this Court's latter finding is Whitaker's assertion that a cause of action "accrues" under Louisiana law upon *discovery* of the cause of action. However, this Court finds that Louisiana law sets accrual on the date when a *loss is incurred* or *damages, sustained.*

Under Louisiana law, "A cause of action accrues when a plaintiff may bring a lawsuit. In a negligence action, for instance, the claimant must be able to allege fault, causation, and damages." Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir. 1995), citing Cole v. Celotex Corp., 599 So.2d 1058, 1063 n. 15 (internal citations omitted). The key in the case sub judice, is differentiating the question of when damages occurred from the question of when Whitaker became aware of the damages. See Grenier v. Medical Engineering Corp. 243 F.3d 200, 204 n. 2 (5th Cir. 2001). As the Grenier Court understood Louisiana law, "the first question determines when a cause of action accrues; the second determines when a tolled prescription period begins to run." Id. "Thus, in cases involving latent injury, the *cause of action accrues when damages are first suffered, but the prescription period does not run until such time as a reasonable plaintiff would become aware of the connection* between her injured condition and the defendant's tortious actions. Id. (emphasis added).

Accordingly, the Court finds that the provisions of the Pre-2002 Policies and the 2002 Policy limiting *coverage* do not violate Louisiana's public policy prohibiting insurers from shortening the prescriptive period for actions against insurers.

**D.** **Reversal of the Bankruptcy Court's Money Judgment in Favor of Whitaker and St. Paul's Recovery of the $110,000.00 Already Paid Whitaker.**

St. Paul asserts for the first time on appeal that it is entitled to recover the $110,000.00

10

already paid to Whitaker under the 2002 Policy. Generally, courts will not consider issues raised for the first time on appeal. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). The rationale for this general policy is to ensure that the parties had the opportunity to offer all of the evidence they believe relevant to the issues. See id. at 120, 96 S.Ct. at 2877.

Whitaker asserts that even if the issue of recovery of the $110,000.00 could be considered by this Court, there are no grounds for relief as St Paul admitted its liability for that payment in its answer to the adversary complaint. This admission, according to Whitaker, amounts to an enforceable judicial confession of that liability. In its reply, St Paul asserts that if this Court determines that the policies do not afford coverage, then the Court should either order Whitaker to repay the $110,000.00 paid in error or remand the issue to the Bankruptcy Court for resolution as it is a court of equity "empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." Matter of Hamilton, 125 F.3d 292, 303 n. 12 (5th Cir. 1997). Whitaker agrees with St. Paul's latter assertion.

This Court finds that justice will be best served by **REMANDING** the issue of recovery of the $110,000.00 paid by St. Paul under the 2002 Policy to the Bankruptcy Court.

## CONCLUSION

For the reasons stated above, the Bankruptcy Court's Final Partial Judgment, entered on August 3, 2006, granting Whitaker's Motion for Summary Judgment and denying St. Paul's Cross-Motion for Summary Judgment is **REVERSED**. Whitaker's claims against St. Paul are **DISMISSED**, and the issue of whether St. Paul may recover the $110,000.00 previously paid is

**REMANDED** to the Bankruptcy Court for determination consistent with this Ruling.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 23 day of January, 2007.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE